UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

Case No. 09-CV-11675

HON. GEORGE CARAM STEEH

PATRICK F. REARDON,

        Defendant.
_____/

ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DOC. 37] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  [DOC. 32]

      Plaintiff, the United States, filed a complaint against defendant, Patrick F. Reardon, on May 1, 2009, seeking judgment for three quarters of payroll tax liability for 1996 and two quarters for 1997.  Defendant has been the only individual in charge of handling paychecks in McRae Electric Company (hereinafter "McRae") since 1972.  Both parties' summary judgment motions are pending before this court.  Defendant moved for partial summary judgment based on the ten year statute of limitations, alleging that the Collection Statute Expiration Date (hereinafter CSED) has passed for the three tax quarters in 1996.  Plaintiff responded that the CSED has not passed because of various events which toll the statute of limitations on tax collection.  Plaintiff moved for summary judgment on the basis that defendant willfully failed to discharge his responsibility to pay taxes according to Internal Revenue Code Section 6672.

      The parties have been before the court on two previous occasions to argue their cross-motions for summary judgment.  At the conclusion of those hearings, on July 1,

2010 and January 27, 2011, the court reopened discovery and permitted the parties to renew their motions for summary judgment.  The case is back before the court on plaintiff's renewed motion for summary judgment and defendant's renewed motion for partial summary judgment.

## FACTUAL BACKGROUND

McRae Electric Company was a corporation specializing in electrical estimation. It was founded by defendant Patrick F. Reardon in 1971.  (Reardon Dep. 5:5-6:1, May 5, 2010).  Defendant was the sole owner and person-in-charge of McRae from 1972 to 1997 or 1998. (Id. 5:14-6:12).  Defendant was "solely in charge of handling checks and things of that nature."  (Id. 6:10-7:1).  During the tax periods at issue, defendant had "a couple of bad jobs", and his creditor, Metro Bank, took control over McRae's cash flow by "lock-boxing" the company's money. (Id. 7:14-7:17).  Nevertheless, defendant was still able to write paychecks to his employees and withhold employment taxes; he admits that he did not pay the money withheld to the Internal Revenue Service. (Id. 7:24-8:22).

In 1998, defendant was assessed by a delegate of the Secretary of the Treasury for his tax liabilities for five quarters in years 1996 and 1997.  The 1996 tax liability was assessed on February 16, 1998 and the 1997 tax liability was assessed on July 20, 1998.  The complaint in this case was filed on May 1, 2009, more than ten years after the two assessments.  The total amount of liability as of November 29, 2010 is $298,379.65, plus interest and other statutory additions.  (Diakite Decl. at ¶ 4).  Of that amount, $215,450.12 is attributed to the 1996 tax quarters and $82,929.53 to the 1997 tax quarters.

There have been four events which could potentially statutorily extend the statute of limitations in this case and permit the collection of the taxes assessed.  First, defendant made an Offer-in-Compromise (an administrative attempt at settlement) on June 24, 2004.  His offer was rejected on October 5, 2004, and he did not appeal.  Second, defendant filed for Chapter 13 bankruptcy protection on August 21, 2007, and the bankruptcy court dismissed the case on November 27, 2007.  Third, defendant submitted an installment agreement request, which was recorded in the electronic system of the IRS on January 7, 2008.  The request was denied on March 20, 2008, and was denied again on appeal on May 5, 2008.  Fourth, on January 7, 2009, defendant requested a collection due process hearing, which was resolved on March 14, 2009.

None of the above stated facts is materially disputed by the parties. However, the parties disagree over the computation of the statute of limitations based on these four events.  The parties further disagree whether defendant was a responsible person of McRae Electric Company, who wilfully failed to collect, truthfully account for and pay over the trust fund taxes to the United States for the periods at issue.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248,

252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

Employers are required to withhold income, Social Security, and Medicare taxes from employees' compensation and timely remit those withheld taxes, held in trust for the United States, to the IRS. When a corporate employer fails to pay those taxes to the IRS, individuals who have had significant control of the financial affairs of the corporation are held responsible for the loss, and so are held personally liable on a dollar-for-dollar basis. Defendant testified he was "everything" in McRae, the one individual "solely in charge of handling checks and things of that nature," that he knew of his obligation to pay over the withheld taxes, but did not do so during the default periods, and that he paid other creditors instead of the taxes. While defendant claims that the 1996 tax liability is barred by the 10-year CSED under 26 U.S.C. § 6502, he does not raise any defense in regard to the 1997 tax liability. The issues presented are whether the United States is entitled to judgment for the federal tax liabilities assessed against defendant, and whether it timely filed this action.

I. Statute of Limitations

When an assessment on tax liability is duly made, the tax may be collected by levy or by a proceeding in court, but only within 10 years after the assessment, plus any time that statutorily suspends the running of the period of limitation. I.R.C. §§ 6502-6503. The three 1996 tax quarters were assessed on February 16, 1998, so the initial CSED was February 16, 2008. Plaintiff contends that at least three of the four events

mentioned in the statement of facts would have extended the CSED to June 9, 2009, which would make the complaint filed May 1, 2009 timely.

Plaintiff's Automated CSED Computation Worksheet correctly calculates the Original CSED Date for the three 1996 quarters as February 16, 2008, and lists a New CSED Date as May 2, 2009. The New CSED Date is calculated using an addition of 163 days due to defendant's Offer-in-Compromise and 278 days due to defendant's bankruptcy.

Internal Revenue Code Section 6331 provides that no levy or collection attempt may be made during the period that an Offer-in-Compromise is pending with the Secretary and during the 30 days thereafter if the Offer is rejected and not appealed. I.R.C. § 6331(k)(1). Defendant made an Offer-in-Compromise on June 24, 2004, and it was rejected on October 5, 2004. Defendant did not appeal, thus the tolling period ended on November 4, 2004 – 30 days after the rejection. The period from June 24 to November 4 is the time during which the Offer was pending plus the 30-day provision after rejection, which amounts to a total of 133 days. Plaintiff's CSED computation worksheet incorrectly suspends the CSED by 163 days by adding the additional 30 day period for a possible appeal twice. Plaintiff does not dispute that this error should be corrected. Therefore, the Offer-in-Compromise suspends the statute of limitations and extends the CSED by 133 days.

Section 6503 of the Internal Revenue Code provides that the running of the period of limitations shall be suspended in a case under Title 11 of the United States Code, plus 6 months thereafter for the collection of tax liabilities. I.R.C. § 6503(h). Defendant commenced his bankruptcy proceeding on August 21, 2007, and it was

dismissed on November 27, 2007. Therefore, the tolling period is from August 21, 2007 to May 26, 2008 – six months after the dismissal. Defendant's bankruptcy proceeding tolled the statute of limitations from August 21, 2007 to May 26, 2008, therefore extending the CSED date by a total of 278 days.

Internal Revenue Code Section 6331 provides that an installment agreement suspends the running of the limitation period in a similar way as an Offer-in-Compromise: the statute of limitations is tolled during the pending of such an agreement, and during the pending of an appeal which is made within 30 days of denial. I.R.C. § 6331(k)(2). Defendant proposed an installment agreement which was received by the IRS in letter on January 10, 2008. The proposal was denied on March 20, 2008, and defendant appealed on April 18, 2008. His appeal was denied on May 5, 2008. Therefore, the statute of limitations is tolled from January 10, 2008 to May 5, 2008, which overlaps with the tolling period resulting from the bankruptcy proceedings (August 21, 2007 - May 26, 2008).

The parties previously vigorously litigated the issue of whether defendant's request for an installment agreement extended the CSED because it overlapped with the tolling period for his bankruptcy proceeding. Plaintiff now takes the position that for purposes of defendant's renewed motion for partial summary judgment the court does not need to decide the issue. In other words, plaintiff is willing to concede that the request for an installment agreement does not further toll the statute of limitations because it completely overlaps with defendant's bankruptcy.

Internal Revenue Code Sections 6320 and 6330 provide that from the time a timely request for a Collection Due Process ("CDP") Hearing is made through its final

determination, the IRS is prohibited from enforcing collection and the CSED is extended by like period. Plaintiff raises a final potential event to extend the statute of limitations and CSED, namely, the Request for Collection Due Process or Equivalent Hearing submitted by counsel on behalf of defendant on January 7, 2009.

The Internal Revenue Code provides that prior to any levy activity, the IRS must provide a CDP Notice and afford a requesting taxpayer with the opportunity for a CDP hearing to be held before its Appeals Division. I.R.C. §§ 6320(a), 6330(a). A CDP hearing "must be requested during the 30-day period that commences the day after the date of the CDP Notice." Treas. Reg. § 301.6330-1(c)(1). A taxpayer who makes a belated request at any point beyond this 30-day window is not statutorily guaranteed a CDP hearing, though they may be afforded an Equivalent Hearing which addresses many of the same issues.

In addition, a taxpayer is afforded only one opportunity for a CDP Hearing per delinquent period. I.R.C. §§ 6320(b)(2), 6330(b)(2), Treas. Reg. § 301.6320-1(b)(1). Once a taxpayer has received a CDP Notice and has been afforded an opportunity for a CDP Hearing, any subsequent requests regarding the same underlying tax periods are treated as Equivalent Hearings.

In this case, a tax lien was originally filed against defendant in 2004, and it appears that defendant received a CDP Notice in 2004 related to that tax lien. (Exhibit D, Case Activity Record). It is unclear whether defendant requested a timely CDP Hearing in 2004. What is certain is that defendant's CDP rights expired in 2004 after the 30 day period lapsed following the filing of the original tax lien. The 2004 tax lien was mistakenly permitted to lapse, so the IRS re-filed a Notice of Federal Tax Lien,

covering the same tax period as the 2004 tax lien.

Defendant submitted a Request for a Collection Due Process or Equivalent Hearing on January 7, 2009 addressing the duplicative lien.  Defendant submits the IRS Case Activity Record generated by Appeals Officer Mark L. Grzesiowski, the Appeals Officer who received the request for hearing on February 9, 2009.  The Officer noted that the lien was not the first one filed for the tax period at issue, and concluded "the taxpayer is not entitled to CDP rights if he received his CDP rights with the original [lien] filing. [Taxpayer] appears to have received CDP rights in 2004, so neither CDP or [sic] [Equivalent Hearing] rights available with recent filing." (Exhibit D).  A final determination was made, resolving defendant's request for a CDP hearing on March 14, 2009.  No appeal was taken.

The Internal Revenue Code provides that if a CDP hearing is requested within thirty days of being provided with notice, the CSED is suspended for the period in which the hearing and any appeals therefrom are pending.  I.R.C. §§ 6330(e)(1), 6320(c) (making the suspension of the collection period in § 6330(e) applicable to CDP hearings brought under § 6320).  "In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing."  I.R.C. § 6330(e)(1).

When addressing the tolling issue, defendant conflates the substantive rules with the procedural.  Substantively, as argued by defendant and found by the Appeals Officer, defendant did not have a right to a CDP hearing for the re-filed Notice of Federal Tax Lien because it covered the same tax period to which he previously had notice of, and a right to, a CDP hearing.  Procedurally, however, it was the timely

*request* for a CDP hearing on January 7, 2009 that triggered the suspension of collection by the IRS and suspension of the statute of limitations.

> . . . . if a hearing is <u>requested</u> under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 (relating to collection after assessment) . . . shall be suspended for the period during which such hearing, and appeals therein, are pending. . . .

I.R.C. §§ 6330(e)(1), 6320(c) (emphasis added).

The purpose for suspending collection and the CSED upon the filing of a timely request for a CDP hearing is clear. The Revenue Officer forwards such requests to the local IRS appeal office where an Appeals Officer reviews and resolves each request. During this time, the Revenue Officer suspends collection action, as was noted in transcript of taxpayer account maintained by the IRS (Official Transcript, p. 8-9). The substance of the final determination has no bearing on the issue of tolling, so long as a timely request for a CDP hearing is made. In addition, the Request for Collection Due Process or Equivalent Hearing itself, just above the requestor's signature, states: "I understand the CDP hearing and any subsequent judicial review will suspend the statutory period of limitations for collection action. I also understand my representative or I must sign and date this request before the IRS Office of Appeals can accept it."

Defendant's request for a CDP hearing was made on January 7, 2009 and was resolved by final determination by the Appeals Officer on March 14, 2009. The CSED was tolled for the 66 day period. When 66 days are added to the April 4, 2009 CSED, the new CSED becomes June 9, 2009, without taking into account the provision in I.R.C. § 6330(e)(1) that the CSED shall not expire before the 90th day after the day on which there is a final determination in the CDP hearing. (Ninety days from March 15,

2009 would be June 13, 2009). The event of requesting a CDP hearing tolled the CSED beyond the filing of the complaint on May 1, 2009. Defendant's motion for partial summary judgment as to the 1996 tax liability is therefore DENIED.

II. Responsible Person

    A. Defendant had Exclusive Control over Tax Withholding

Defendant had exclusive control over the employment tax withholding in McRae during the tax periods at issue, hence he is personally liable for the tax liability incurred. In order to be personally penalized, one has to be the main person in charge of employment tax withholding. I.R.C. § 6672 (a); Gephart v. United States, 818 F.2d 469 (6th Cir. 1987). The purposes of subjecting the employer to civil and / or criminal penalty for failure to pay employment taxes are to ensure that the employer would comply with his obligations, and to create a "trust fund" in favor of the United States. See Slodov v. United States, 436 U.S. 238, 247-248 (1978). In the Sixth Circuit, a person having inherent or ultimate authority is a responsible person. Gephart, 818 F.2d at 473. His liability is established so long as he has significant, as opposed to absolute, managerial control over the expenditure of funds. Id.

McRae is defendant's own company. Defendant has been the sole shareholder since 1972, and he was the only one in charge of "handling checks and things of that nature". (Reardon Dep. 6:10-7:1, May 5, 2010). This is the maximum level of control over a corporation's finances that one can possibly have. Even during the time when Metro Bank lock-boxed a portion of McRae's money, defendant still had a sufficient level of control so as to make payments to his employees, and to withhold employment taxes without paying them to the Government. (Id. 7:24-8:9, May 5, 2010). Defendant

maintained exclusive control over the company's internal finances throughout, and such control was technically sufficient for him to fulfill his tax liabilities. Undoubtedly, defendant is the sole responsible person, and he can be held personally liable for tax purposes.

### B. Defendant Willfully Evaded Taxes

Defendant has willfully evaded his tax liability because he had full knowledge of the nature of his act, but still made the conscious choice of not making tax payments to the United States. More than negligence is required for "willfulness": there needs to be conscious awareness or reckless disregard for obvious or known risks. Gephart, 818 F.2d at 475. Willfulness does not connote a malicious motive, but rather means that the action is voluntary and intentional. Honey v. United States, 963 F.2d 1083, 1087 (8th Cir. 1992); Collins v. United States, 848 F.2d 740, 742 (6th Cir. 1988).

Defendant made a conscious decision in not paying the employment taxes because of the financial difficulties of his business. He was fully aware of his tax liability, but he chose not to pay the tax to the Government because he wanted to keep the cash so that his business could "keep going". (Reardon Dep. 7:19-7:23, May 5, 2010). He intended to "make it up" at a later time, but undoubtedly there has already been willful tax evasion. Id.

### C. Defendant does not have Legitimate Excuses to Exempt his Liability

Contrary to defendant's assertion, defendant's tax liability is not mitigated or exempted due to his financial difficulties or his creditor's control over McRae's cash flow by the lock-boxing protocol. Federal case law has consistently held that failure to pay taxes due to the Government in order to please other creditors is a violation. See, e.g.,

12

Burden v. United States, 486 F.2d 302, (10th Cir. 1973); Stake v. United States, 347 F. Supp. 823 (D. Minn. 1972). Furthermore, the worsening financial situation of a corporation is never a valid excuse for failure to pay federal tax. See Kubinski v. United States, 285 F. Supp 849, 851 (D. Minn. 1968). Even if a corporation faces grave financial difficulties and has to pay off debts to other creditors in order to survive, it is still not a "reasonable cause" to discharge the corporation's tax delinquencies. Baimbridge v. United States, 335 F. Supp.2d 1084, 1091 (S.D. Cal. 1994) (quoting Sorenson v. United States, 521 F.2d 325 (9th Cir. 1975)).

As dire and difficult as the defendant's financial situation might have been, he was still able to make paychecks and withhold taxes to his general business fund, even during the time that Metro Bank allegedly controlled a large amount of McRae's cash flow. Even if the extent of control by Metro Bank is a factual question, it is immaterial as a matter of law: liability to other creditors simply does not excuse defendant's tax evasion to the Government. The "scope of impact" of Metro Bank's lock-boxing protocol is an immaterial issue of fact that should not be factored into this court's decision under the summary judgment standard.

## CONCLUSION

Summary judgment is granted in favor of plaintiff with respect to the 1996 and 1997 tax quarters because there is no genuine issue of material fact with regard to defendant's tax liability and willful tax evasion. The amount owing by defendant on all

of the tax quarters at issue is $298,379.65 plus interest and statutory additions from November 29, 2010.

Dated: September 12, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 12, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---